# 45527. JACKSON v. SOUTHERN PAN & SHORING COMPANY et al.

### (369 SE2d 239)

HUNT, Justice.

Sarah Jackson appeals the trial court's grant of summary judgment to Southern Pan and the company's shareholders voiding her stock purchase warrant; she also appeals the court's denial of her motion for summary judgment on her counterclaim seeking declaratory relief.

In 1978, Jackson guaranteed a $786,000 loan for Custom Form Leasing Company. As part of the loan transaction, Custom Form incorporated Southern Pan as a wholly-owned subsidiary, eighty percent of whose shares Jackson could purchase for $80,000 by exercising, before 1990, a warrant given her for guaranteeing the loan. The loan was satisfied, but when Jackson attempted to exercise her stock purchase warrant on May 8, 1987, Southern Pan and its shareholders initiated a declaratory action.

1. The trial court ruled the stock purchase warrant void, because it was issued prior to the certification of Southern Pan's legal incorporation, and thus, before its legal existence.

Nevertheless, the testimony of Gordon Jackson (Ms. Jackson's son), Neill Faucett, and Harvey Phillips is uncontroverted that, acting in their capacities as members of the boards of both Custom Form and Southern Pan, they expressly authorized the preparation, execution and delivery of the stock purchase warrant to Jackson. Their testimony is also uncontroverted that immediately following Southern Pan's incorporation, the three board members expressly ratified and approved the warrant.

In general, a contract made by the promoters of a corporation on its behalf may be adopted, accepted or ratified by the corporation when it is organized: the corporation then becomes liable for the contract itself, and not merely for the benefits received. Thus, if the corporation accepts the benefits of the contract, it is generally required to perform the obligations. *Fletcher, Encyclopedia of the Law of Private Corporations* § 207 (1983). See *Chicago Building &c. Co. v. Talbotton Creamery &c. Co.*, 106 Ga. 84 (2) (31 SE 809) (1898). Southern Pan unquestionably received the benefits of the consideration for Jackson's warrant — her guaranty of the loan.[1]

---

[1] The cases cited by the appellees in support of their argument that the corporation cannot be liable for contracts executed prior to its creation are inapplicable, because none of those cases involved subsequent ratification of the contracts by the corporation.

Nor do we find merit to the appellees' argument that the testimony of Gordon Jackson, Faucett and Phillips is inadmissible to prove the warrant was ratified. A sufficient foundation for parole evidence on that issue was laid by their testimony that no record was kept of their agreement to ratify the warrant. *Caudell v. Athens Savings Bank*, 140 Ga. 713 (1) (79 SE

The trial court therefore erred by holding the warrant invalid because it was issued before the corporation had any legal status.

2. (a) The trial court also held the stock purchase warrant void because it was not issued in strict compliance with OCGA § 14-2-86 (a) which provides:

> no issuance of rights or options entitling the holders thereof to purchase a specified number of shares or fractional shares from the corporation shall be made unless a sufficient number of authorized but unissued shares . . . are reserved by the Board of Directors to be issued only on the exercise of such rights or options.

When the issuance of the stock purchase warrant was ratified, Southern Pan had not reserved a sufficient number of authorized but unissued shares to cover the potential exercise of the warrant.

The question here is whether Southern Pan may rely on its own failure to comply with this provision to defeat Jackson's option. We think not, where Southern Pan prepared the warrant and received and benefitted from the consideration therefor.

> "The main purpose of contract law is the realization of reasonable expectations induced by promises." [Cit.] This court has previously held that "[a] party may enter into a contract invalid and unenforceable, and by reason of the covenants therein contained and promises made in connection with the same, wrongfully cause the opposite party to forego a valuable legal right to his detriment, and in this manner by his conduct waive the right to repudiate the contract and become estopped to deny the opposite party any benefits that may accrue to him under the terms of the agreement." [Cit.]

*Pepsi Cola Bottling Co. v. First Nat. Bank*, 248 Ga. 114, 116 (2) (281 SE2d 579) (1981). See also OCGA § 13-3-44 (a). In the warrant, Southern Pan agreed to amend the corporation's charter to permit issuing sufficient shares if Jackson exercised her option:

> The Company covenants and agrees that during the period within which the rights represented by this Warrant may be exercised, the Company will reserve and at all times keep available for issuance a sufficient number of unencumbered shares of common stock of the Company to permit the exercise of the rights represented by this Warrant *or amend its*

*Charter to provide for same.* [Emphasis supplied.]

Southern Pan received the benefit of the guaranty, without which it would not have been able to obtain the loan. In addition, Jackson suffered a loss and disadvantage by guaranteeing the loan, thus risking her own financial security. Thus, under the uncontroverted facts in this case, Jackson's warrant is legally enforceable.

(b) Further, without deciding the issue, we question whether failure to comply with OCGA § 14-2-86 (a) would void a warrant in any case. The express intent of this provision — which has been repealed effective July 1, 1989[2] — is set out in the Comment to OCGA § 14-2-86: that is, "to insure that the corporation will not have to go into the market in order to obtain the shares necessary to satisfy the demands of holders of share rights or options."[3] Given this express intent, and given the liberal rules regarding the ability of a corporation to amend its charter to increase the number of authorized but unissued shares,[4] no reasonable justification exists for voiding a warrant like Ms. Jackson's. Indeed, the North Carolina statute on which OCGA § 14-2-86 (a) is based explicitly states that a corporation's failure to reserve authorized shares sufficient to meet a purchase option "shall not impair the right to claim damages from the corporation." N.C. Statutes § 55-44 (f). (See Comment to OCGA § 14-2-86 (a)).

The trial court therefore erred by holding the warrant invalid and erred by denying Jackson's motion for summary judgment on her claim that the warrant is valid and enforceable.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 20, 1988 —
RECONSIDERATION DENIED JULY 13, 1988.

*Dodd, Connell & Hughes, Robert L. Dodd, Jr., Ellwood F. Oakley III, Sell & Melton, John D. Comer,* for appellant.
*Casper Rich, Edward J. Harrell, George C. Grant,* for appellees.

---

[2] House Bill 1272, effective July 1, 1989, repeals OCGA § 14-2-86 (a) and replaces that section with a new § 14-2-624 (b) which states ". . .the granting of [options or warrants] is not invalid solely by reason of the lack of sufficient authorized shares to honor the exercise of the rights."
We also note that the soon-to-be-repealed statute is a departure from the Model Business Corporation's Act on which most of the Georgia Business Corporations Code is based, and from preexisting Georgia law. (See Comment to OCGA § 14-2-86.)

[3] This section has little application to closely held corporations such as Southern Pan where there is typically no "market" for shares and no need to protect the corporation from fluctuations in the market.

[4] See OCGA § 14-2-190 (b) (4).