297 Ga. 551
FINAL COPY

S15A0193.  FROEHLICH v. FROEHLICH.

NAHMIAS, Justice.

Tigh Froehlich (Husband) appeals the trial court's order holding him in contempt of the parties' divorce decree and a later order approving a modified parenting plan.  Husband challenges four of the court's five findings of willful violations of the prior court orders.  He also contends that the court impermissibly modified the divorce decree in the contempt proceeding by ordering him to transfer to Deirdre Froehlich (Wife) half of his accumulated Marriott hotel loyalty program points, which the decree awarded to her; requiring him to make an accounting of the points prior to the transfer; and obligating him to provide an annual accounting of the points he accumulates in the future before transferring Wife's share of the points to her.  Finally, Husband claims that in light of these alleged errors, the trial court erred in awarding Wife $7,468.33 in attorney fees.  We affirm.

1.  The parties married in 1996 and were divorced on December 5, 2011.  They have two minor children.  As relevant here, the divorce decree, which incorporated the parties' separation agreement, gave them joint legal

custody of the children, designated Wife as the primary physical custodian, and established a visitation schedule; required Husband to maintain health insurance for the children and to supply Wife with health insurance cards for them; said that major decisions regarding the children would be made jointly by the parties, but specified that "[a]ll disagreements shall result in the primary custodial parent [i.e., Wife] making the decision"; and stated that both parties would "execute all documents, perform all acts, and do all things necessary to transfer any of the assets, or to effectuate any of the provisions and conditions set forth herein, if any are necessary."

The divorce decree required Husband, a Gulfstream Aerospace flight engineer who travels out-of-state or abroad for work for roughly half of each year, to "transfer or otherwise make available for use by [Wife] . . . one half of the Marriot[t] points accumulated, (currently 540,419), so long as they are accumulated." Wife also received "sole title and exclusive possession" of the marital home. On December 15, 2011, the parties signed a post-marital agreement that allowed Husband to temporarily store his tools and miscellaneous items in a shed adjacent to the marital residence but required him to notify Wife in advance when he wanted to access his things, except in

2

unusual circumstances and after attempting proper notice.

On June 26, 2013, the trial court entered a modified parenting plan order incorporating the parties' agreement to a modified plan. In addition to a new visitation provision addressing Husband's uncertain work schedule, the order continued joint legal custody, which the order explained

> contemplates that the parties will consult with each other concerning matters affecting the health, education and welfare of the minor children, including, but not limited to[,] choice of schools and education, summer camps, daycare, medical and dental treatment, treatment and/or counseling for emotional and behavioral problems and religious training.

The order said that Wife would remain the primary physical custodian and again specified that she would be the "tiebreaker" in the event of any disagreements between the parties.

On January 14, 2014, Wife filed a motion for contempt, which she amended twice. The trial court held a three-day evidentiary hearing on May 28-30, 2014, at which both parties testified and introduced documentary evidence. On June 5, 2014, the court entered an order finding that Husband willfully violated the divorce decree by not furnishing Wife with health insurance cards for the children; entering the marital residence without Wife's permission; and

3

failing to transfer or otherwise make available for use by Wife one-half of all his accumulated Marriott points by placing unnecessary and restrictive conditions not contained in the divorce decree on her use and enjoyment of the points. The court also found that Husband willfully violated the modified parenting plan order by refusing to confer and consult with Wife concerning all major decisions bearing on the children's lives, including the older child's education and extracurricular activities, and by failing to comply with the modified visitation schedule and refusing to timely return the children to Wife.

To remedy Husband's contempt, the order required him, among other things, to make an accounting of Wife's portion of the accumulated Marriott points; to transfer those points to Wife within 20 days; and to provide her with an "annual accounting of all points accumulated by the 15th of January of each year and then . . . ensure that said points are transferred to [Wife] by the 15th of February of each year."[1] The order warned Husband that his failure to abide by its conditions will result in his incarceration for ten days in the county jail. Finally, the order reserved the matter of attorney fees, directing the parties to

---

[1] In the alternative, the contempt order permits Husband to purchase Wife's portion of the Marriott points from her at a rate of $12.50 per 1,000 points. Husband does not challenge this part of the order, and neither does Wife, so we express no opinion on it.

4

submit briefs on that issue.

On July 14, 2014, the trial court entered an order awarding Wife $7,468.33 in attorney fees pursuant to OCGA § 19-6-2. Husband then filed a timely notice of appeal directed to the Court of Appeals, which properly transferred the case to this Court, as it comes within our subject matter jurisdiction over "[a]ll divorce and alimony cases." Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (6). See Morris v. Morris, 284 Ga. 748, 750 (670 SE2d 84) (2008).

2. We begin by addressing a jurisdictional issue involving appellate procedure. On November 3, 2014, this Court dismissed Husband's appeal for failure to comply with the discretionary appeal procedures in OCGA § 5-6-35. However, Husband filed a motion for reconsideration, which correctly argued that an application to appeal was not required because the contempt order was based in part on the trial court's ruling that he willfully violated the visitation provisions of the modified parenting plan order and he was trying to challenge that ruling on appeal. For purposes of appellate procedure, visitation is treated as an aspect of child custody. See Edge v. Edge, 290 Ga. 551, 552-553 (722 SE2d 749) (2012) (noting that in some contexts, "custody" includes visitation

5

rights).  And as a result of a 2007 amendment to OCGA § 5-6-35 (a) (2), an application to appeal is no longer required to obtain an appeal from an order awarding, modifying, or refusing to change child custody, including an order holding or declining to hold a person in contempt of such a custody order.  See Ga. L. 2007, p. 554, § 3 (amending OCGA § 5-6-35 (a) (2) to delete the following struck-through text, so that an application to appeal is now required in "[a]ppeals from judgments or orders in divorce, alimony, ~~child custody~~, and other domestic relations cases including, but not limited to, granting or refusing a divorce or temporary or permanent alimony~~, awarding or refusing to change child custody,~~ or holding or declining to hold persons in contempt of such alimony ~~or child custody~~ judgment or orders").  See also OCGA § 5-6-34 (a) (11) (authorizing an immediate appeal, without requiring compliance with the interlocutory appeal procedures, of "[a]ll judgments or orders in child custody cases awarding, refusing to change, or modifying child custody or holding or declining to hold persons in contempt of such child custody judgment or orders").  Accordingly, on November 20, 2014, we granted Husband's motion for reconsideration and vacated our prior order dismissing his appeal.

    3.    Turning now to the merits of the appeal, Husband claims first that

6

the trial court erred in four of its five findings that he willfully violated the divorce decree and the modified parenting plan order; he accepts only the finding that he willfully violated the decree by failing to provide Wife with health insurance cards for the children. "Trial courts have 'broad discretion' in ruling on a motion for contempt, and the trial court's ruling will be affirmed on appeal if there is any evidence in the record to support it." Killingsworth v. Killingsworth, 286 Ga. 234, 237 (686 SE2d 640) (2009) (citation omitted).

Husband contends that there was no evidence before the trial court that he entered the marital residence without Wife's permission; failed to make one-half of his accumulated Marriott points available for use by Wife; failed to comply with the visitation schedule or refused to timely return the children; or refused to confer with Wife on major decisions concerning the children's education and extracurricular activities. However, Wife testified to all of these things at the contempt hearing, and she also introduced documentary evidence like e-mails and text messages supporting each violation. Moreover, Husband's own testimony showed that he failed to comply with the visitation schedule and refused to confer with Wife on significant decisions about the older child's activities. The trial court was able to evaluate the parties' credibility and was

7

entitled to credit Wife's testimony (and supporting evidence) over Husband's partial denials and excuses for his noncompliance with the court's orders. See Horn v. Shepherd, 292 Ga. 14, 18 (732 SE2d 427) (2012) ("'The essence of civil contempt is wilful disobedience of a prior court order, and it is for the trial court to determine the credibility of the witnesses in ruling thereon.'" (citation omitted)).

Husband also claims that a legal error underlay the trial court's finding that he willfully violated the divorce decree's provision regarding the Marriott points. In his testimony at the contempt hearing, Husband admitted that he had repeatedly refused Wife's requests to transfer any of the points to her even though she had her own Marriott points account and it would cost nothing to transfer the points. But he asserted that the divorce decree expressly gives him the option to "otherwise make available" for Wife's use her 50% share of the points he has accumulated, rather than transferring the points to her. That is true, but Husband acknowledged that he also told Wife that he would not let her use the Marriott points unless she acceded to his demands to provide him with her travel plans and allow him to book her hotel reservations for her. We agree with the trial court that the divorce decree does not give Husband the right to

make the Marriott points available to Wife only with conditions Husband chooses to add regarding her use of the points that were awarded to her.

Accordingly, we affirm the trial court's findings that Husband willfully violated the divorce decree and the modification order in each of the ways the court identified.

4.  In response to Husband's willful contempt, the trial court ordered him to make an accounting of the Marriott points accumulated thus far and to transfer Wife's share of the points to her within 20 days. As for points accumulated in the future, the court ordered Husband to make an annual accounting by January 15 of each year and then to ensure that the points are transferred to Wife by February 15. Husband contends that these provisions of the contempt order impermissibly modified the divorce decree. We disagree.

As Husband correctly notes, "in response to willful contempt of a divorce decree, a trial court has broad discretion to enforce the letter and spirit of the decree, but the court must do so without modifying the original judgment that is being enforced." Darroch v. Willis, 286 Ga. 566, 570 (690 SE2d 410) (2010). In addressing violations of a divorce decree, however, a "trial court may impose additional requirements in [a] contempt decree made necessary by [a] party's

9

refusal to obey [the court's] original order." Smith v. Smith, 293 Ga. 563, 564 (748 SE2d 456) (2013). See, e.g., Gooch v. Gooch, 297 Ga. 189 (___ SE2d ___) (2015) (holding that where the husband, contrary to the divorce decree, made an irrevocable designation of his new wife instead of his former wife as the recipient of the survivor benefits from his retirement plan, the trial court could enforce the decree with a contempt order requiring him "to secure something of the same monetary value as that which was set forth in the violated order"); Doritis v. Doritis, 294 Ga. 421, 421-422 (754 SE2d 53) (2014) (affirming a contempt order that required the husband to pay the wife the value of jewelry that the parties had agreed pursuant to the divorce decree that she would receive but that husband had sold); Smith, 293 Ga. at 564-565 (upholding a contempt order requiring the husband to pay the wife the fair market value of personal property awarded to her in the divorce decree that he had failed to turn over).

Given Husband's acknowledged failure to track the Marriott points as they accumulated and his refusal to transfer or otherwise make unconditionally available to Wife the points allocated to her in the divorce decree, the accounting and transfer requirements of the contempt order were reasonable and

necessary to implement the terms of the original decree. Thus, we conclude that "[t]he relief awarded in the contempt order, made necessary by [H]usband's refusal to obey the original decree, did not modify that decree but remedied the harm caused by [H]usband's contemptuous conduct." Smith, 293 Ga. at 565.

Husband's reliance on Killingsworth is misplaced. In that case, we held that the trial court impermissibly modified the divorce decree by ordering a cash payment to the wife in lieu of the transfer of half of a 401(k) retirement account, where "[t]he divorce decree specified both how [Wife's] interest in the 401(k) account would be calculated and the manner in which the transfer was to be accomplished, including requiring her counsel to prepare the QDRO." 286 Ga. at 236. We held that "transmuting this award into a presently due cash obligation" was an impermissible modification. Id. Unlike Killingsworth, the contempt order in this case does not transmute any property or compel Husband to relinquish or sell any asset awarded to him by the divorce decree. The Marriott points at issue are Wife's property, which Husband's contempt has prevented her from receiving.

5. Finally, Husband argues that if we rule in his favor on any other issue and remand the case to the trial court, we should direct the court to

11

reexamine the amount of attorney fees awarded to Wife. See Killingsworth, 286 Ga. at 237-238. This argument is moot in light of our rejection of Husband's other enumerations of error. See Doane v. LeCornu, 289 Ga. 379, 382 (711 SE2d 673) (2011).

Judgment affirmed. All the Justices concur.

Decided July 13, 2015.

Domestic relations. Effingham Superior Court. Before Judge Woodrum.

<u>Dozier & Hillis, Dennis G. Dozier, Sr., Bethany M. Hillis</u>, for appellant.

<u>Johnson, Kraeuter & Dunn, Jonathan V. Dunn</u>, for appellee.